W. BRUCE SHURTLEFF ET AL., TRUSTEES, APPELLANTS, v.
L. K. SCHOENLEBER ET AL., APPELLEES.

FILED OCTOBER 14, 1921. No. 22012.

1. **Corporations: DISSOLUTION: TRUSTEES: DUTIES.** Where, by operation of law, the directors of a dissolved corporation are made trustees for its creditors and stockholders, and the statute specifically points out and designates their duties as such, they are not entitled to instructions from a court of equity.

2. **Trusts: STATUTORY TRUSTS.** The rule that when the meaning of a will, deed, contract or other instrument which relates to or creates a trust, is doubtful, so that by reason thereof the trustee is embarrassed or exposed to danger in the execution of his trust, a court of equity will construe the instrument, declare its legal force and effect and give advice and instruction in regard to carrying out of said trust, *held* not to apply in a case where the trust is created by statute and the duties imposed specifically stated.

3. ———: ———: NEGLECT OF TRUSTEES. Under section 559, Rev. St. 1913, before a court of equity will assume control of the trustees of a dissolved corporation, it must appear from the petition of some person interested that they have been guilty of some neglect, or omission of duty, or abuse of trust. The petition examined, and *held* not to state a cause of action under this section of the statute.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Affirmed.*

C. C. Flansburg, for appellants.

G. H. Risser, C. S. Wilson, Albert S. Johnston and W. T. Stevens, contra.

Heard before MORRISSEY, C.J., ROSE and ALDRICH, JJ., DICKSON and TROUP, District Judges.

DICKSON, District Judge.

This is a suit in equity begun in the district court for Lancaster county. The court sustained a demurrer to the petition, and appellants, plaintiffs below, stood on their petition, refusing to plead further, and the case was dismissed.

The petition alleges that prior to January 26, 1918, the Jen-Lan Company was a corporation engaged in buying, selling and exchanging real estate, with an authorized capital of $50,000; that on January 26, 1918, the stockholders changed the name to Federal Building & Investment Company, and the articles of incorporation were amended increasing the capital stock to $300,000, 2,400 shares being preferred and 600 shares being common, of the par value of $100. Among other things there was a provision relating to the preferred stock, as follows:

"The holders of preferred stock shall be entitled to receive, when and as declared by the board of directors from the surplus or net profits of the corporation, yearly dividends at the rate of seven per cent. per annum, payable semi-annually on July and January 1st of each year. The dividends on such preferred stock shall be cumulative and shall be paid before any dividends on the common stock shall be paid or set apart, so that if in any year the dividends amounting to seven per cent. shall not have been paid upon the preferred stock the deficiency shall be payable before any dividends shall be paid upon or set apart for the common stock.

"The holders of common stock shall be entitled to receive, when and as declared from the surplus or net profits of the corporation, yearly dividends at the rate of seven per cent. per annum, payable semi-annually on July and January 1st of each year, and such dividends shall likewise be cumulative, but shall not be payable until all dividends on the preferred stock for all previous years have been fully paid, or the company shall have set aside from its surplus or net profits a sufficient sum to meet the payment thereof.

"After all such cumulative dividends on the preferred and common stock have been fully paid and provided for, the board of directors may set aside such additional amount of the net surplus or profits of the corporation as they may deem proper as additional dividends. Of such amount so set aside twenty-five per cent. shall be paid to the holders of the preferred stock, fifty per cent. shall be paid to the holders of the common stock, and the remaining twenty-five per cent. shall be carried as reserve which is to be used to pay the seven per cent. dividends on the preferred stock should said corporation during any one year fail to earn sufficient out of which to pay the seven per cent. dividend on the preferred stock. Should said surplus fund accumulate, it may be reduced and distributed by the order of the board of directors; and upon any distribution of said surplus fund, fifty per cent. thereof shall be distributed to the preferred stockholders and the remaining fifty per cent. shall be distributed to the common stockholders.

"In case of the dissolution of this corporation, the preferred stock shall be preferred to the extent of the par value together with any earned and unpaid dividends due thereon at the rate of seven per cent. per annum. After such amounts have been paid to the preferred stock, the common stock shall then be paid its par value together with any earned and unpaid dividends due thereon at the rate of seven per cent. per annum. Any surplus remaining thereafter shall be divided pro rata among the shares of the preferred and common stock."

The common stock merely certified that the holder was the owner of a given number of shares of stock, without any provision with regard to dividends. Under the amended articles of incorporation, 785½ shares of preferred stock and 603 shares of common stock were issued, which were fully paid for at the time of the issuance. The purpose of the corporation was to build apartment houses, store buildings, including garages and dwelling-houses. From the money derived from the sale of stock,

property was purchased, repaired and remodeled, only two new buildings being constructed.

On January 20, 1920, the properties held by the corporation were appraised at $382,500, with incumbrances of $113,975.26. There were other assets at that time estimated at $65,464.36, with liabilities, including corporate stock outstanding, of about $157,855.66. At the annual meeting of the stockholders held March 2 the financial condition of the company was discussed, and the president was authorized to sell properties of the company for the purpose of liquidating outstanding obligations. Failing in this, a special meeting of the stockholders was called for June 26 to consider the manner of dissolving and liquidating the corporation. At this meeting the stockholders voted to dissolve the corporation, and to assist in the liquidation two stockholders were elected to act in conjunction with the directors. At a meeting of the liquidating committee held September 11, 1920, it was agreed that the property could not be reduced to cash without great sacrifice, and it was proposed to divide the properties into groups and offer to permit the stockholders to surrender stock for same—the groups being composed of properties that had been handled as units by the company—and notice was then given to each stockholder that they could bid on said property, or make an offer to exchange stock therefor on the basis of $200 a share for an equal interest in the groups of properties based on the appraised value.

It is further alleged in the petition that the applicants are mandatories of the court, created trustees by operation of law upon dissolution, holding the properties of the corporation in trust for the benefit of the creditors and stockholders; that they have been advised they have the right to divide and distribute the property of the corporation in specie under the terms of the statute, but have been unable to fix upon a definite plan or exact terms of liquidation in the exchange of stock for property; that the value of the two classes of stock depends upon what

is to be treated as surplusage or earnings and the value of the property, and are in doubt as to the meaning of the trust and duties imposed upon them.

By supplemental petition it is alleged that, since the filing of the original petition, a special meeting of the stockholders was held; at this meeting the property was estimated to be the value of $151,850 and the company's indebtedness at about the sum of $10,000; that since this special meeting, which was held on November 20, 1920, an offer was made to appellants to exchange 176 shares of preferred stock for the equity in the property owned by the company and known as the Lincolndale property, subject to $30,000 incumbrance thereon; and an offer of 100 shares of common stock for the Sewell street lots owned by the company, subject to $10,000 incumbrance; and that 170 shares of preferred stock were offered for the equity in the Rollins building owned by the company, the incumbrance thereon being $33,000; that the appellants desire the assistance of the court in making distribution and liquidation of this stock and transfer of this property, if the same can, in the judgment of the court, be done without prejudice to the rights of the other shareholders. It is alleged that parties owing notes given for stock desire to liquidate their stock by surrendering the same for the notes on the basis of the par value of the stock. And the appellants pray the aid of the court to take testimony and fix and ascertain the value of all the real estate and properties held and owned by the company at the date of its dissolution; that the court, by decree, fix and determine the method of liquidation; that the court authorize and empower the trustees to make the exchange of property for said stock, each transaction to be reported to the court and confirmed by the court; and that the court direct, by its decree, the method of meeting the obligations of said dissolved corporation; and for such other and further instructions as the court may deem necessary in discharge of the trust imposed upon them by law.

The sole issue presented is whether the petition states a cause of action. To determine this question it is necessary to examine several provisions of our statutes.

Section 558, Rev. St. 1913, provides that the title of all real estate belonging to a dissolved corporation shall, at the time of the dissolution of the same, pass to the trustees of such corporation, who shall have full power and authority to sell and dispose of any such real estate in such manner and upon such terms as may be thought best for the interest of the creditors and stockholders; and upon such sale to make a good and sufficient title therefor.

By section 555, Rev. St. 1913, it is provided that, upon the dissolution of any corporation, the directors or managers of the affairs of such corporation shall be trustees of the creditors and stockholders of the corporation dissolved, and shall have full power to settle the affairs of the same, collect and pay the outstanding debts, and divide among the stockholders the moneys and properties that shall remain in proportion to the stock of each stockholder paid up, after the payment of debts and necessary expenses.

By section 559, Rev. St. 1913, it is provided the trustees of any such dissolved corporation shall be subject to the control of the court, and be liable to be sued by petition in equity on behalf of any person interested on account of any neglect or omission of duty or abuse of trust.

By statute it is made the duty of the appellants to settle the affairs of the corporation, and imposes upon them the duty of deciding every proposition that they, by their petition, seek to have the court determine. In bringing this action appellants evidently relied upon section 559 to give the court jurisdiction. That this section gives the court jurisdiction over the trustees of a dissolved corporation cannot be disputed. But when and how will it be exercised, and at whose instance? The statute specifically points out the duties of the appellants, and, if they fail in that regard, they are subject to the control of the

court, and not otherwise. A careful analysis of the petition fails to show that the appellants have done or propose doing that which is a neglect or omission of duty or an abuse of the trust imposed upon them by law. And until they have done or propose doing some such act, they are not subject to the control of the court. Besides the action must be on the petition of some person interested, and because of some neglect or omission of duty or abuse of the trust imposed upon them by law. The statutory right to sue by some person interested precludes the appellants from bringing the action authorized by this section. It therefore follows that the petition does not state a cause of action under this section.

The appellants seek to invoke the rule that when the meaning of a will, deed, contract or other instrument which relates to or creates a trust is doubtful, so that by reason thereof the trustee is embarrassed or exposed to dangers in the execution of his trust, a court of equity will construe the instrument, declare its legal force and effect, and give advice and instruction in regard to carrying out of said trust. The statute creating the trust imposes no duty upon the appellants that is doubtful or that will embarrass them in the exercise of the duties devolving upon them. True, the petition recites that certain stockholders propose to surrender stock in exchange for certain properties, and others to surrender stock for notes given in settlement for stock and not paid, and that they have been advised by counsel that as trustees and by operation of law they have the right to divide and distribute the property of the corporation in specie under the terms of the statute, and that the value of the two classes of stock depends upon what is to be treated as surplus or earnings and the value of the property, and that they are in doubt as to what they should do, and pray that the court fix and determine the method of liquidation. In other words, that the court shall relieve the appellants of the duties and responsibilities imposed upon them by law, some of which are mandatory and

others discretionary. We are of the opinion that the facts stated in the petition do not bring them within this rule. To follow such a rule in this case would be the discharging by the court of the duties imposed upon appellants by law and relieve them from responsibility in the liquidation of the affairs of the corporation. This the court will not do. The appellants are, by statute, made trustees of the dissolved corporation. Their duties are specifically pointed out, fixed and determined by law, and they are not entitled to apply to the court for instructions. To instruct them would be to direct that they follow the plain and explicit direction of the statute.

The petition does not state a cause of action, and the trial court properly sustained the demurrers thereto.

The judgment of the lower court is

AFFIRMED.